UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

JUDI A. KONWICKI,

                Plaintiff,

v.                                                            DECISION AND ORDER
                                                                   18-CV-460

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

## INTRODUCTION

Plaintiff Judi Konwicki brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her application for disability insurance benefits ("DIB") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 14, 16. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

On February 11, 2015, the plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") alleging disability since August 1, 2013, due to: cervical spine impairment, severe neck and back pain, bulging disc injury, multiple

joint arthritis, degenerative disc disease, and spondylosis. Tr.[1] 216-19, 232. On March 30, 2015, the plaintiff's claim was denied by the SSA at the initial level. Tr. 136-142. On June 21, 2017, the plaintiff appeared with her attorney and testified before Administrative Law Judge Sharon Seeley ("the ALJ"). Tr. 99-135. On October 13, 2017, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 18-36. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on February 16, 2018. Tr. 1-7. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that

---

[1] References to "Tr." are to the administrative record in this matter.

2

review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. The ALJ found the plaintiff met insured status requirements of the SSA through December 31, 2014. Tr. 23. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2013, through her date last insured, December 31, 2014. Tr. 23. At step two, the ALJ found the plaintiff has the following severe impairments through December 31, 2014: cervical and lumbar spondylosis and degenerative disc disease. Tr. 23. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 24.

Next, the ALJ determined that the plaintiff retained the RFC to perform light work[2] with additional limitations. Tr. 25. Specifically, she needs to alternate after one hour of sitting to standing five minutes and after one hour standing or walking to sitting five minutes. *Id.* Further she may: occasionally balance, stoop, kneel, crouch, crawl, and reach overhead; frequently handle and finger with the bilateral upper extremities; and frequently reach in other directions. *Id.* At step four, the ALJ relied on the VE's testimony and found that the plaintiff was unable to perform her past relevant work as a "Home Health Care Aide." Tr. 18. At step five, the ALJ considered the plaintiff's age (54 on the date last insured, "closely approaching advanced age"), limited education, ability to communicate in English, work experience, RFC, and the VE's testimony and concluded that the plaintiff would have been capable of performing other work that existed in significant numbers in the national economy. Tr. 31. Specifically, the ALJ found the plaintiff could perform work as a "Sales Attendant"; "Routing Clerk"; and "Photocopy Machine Operator". *Id.* Accordingly, the ALJ found the plaintiff was not disabled from August 1, 2013, through December 31, 2014, the date last insured. *Id.*

II.  **Analysis**

Plaintiff argues that remand for calculation of benefits is warranted where the ALJ: (1) improperly assessed the plaintiff's borderline age at step five; (2) erred in

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567

5

discrediting the 2015 report prepared by Sara Nash, R-PAC ("PA Nash"); and (3) in discrediting the plaintiff's subjective complaints. Dkt. No. 14 at 20, 27, 28. The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. No. 16 at 12. This Court finds the ALJ properly found the plaintiff was a person approaching advanced age at step five; reasonably accorded little weight to PA Nash's opinion; and reasonably relied on the medical evidence over the plaintiff's subjective complaints.

**Borderline Age**

At step five, "an ALJ must consider [the claimant's] chronological age in combination with her [RFC], education, and work experience," in determining whether she can perform other substantial gainful work that exists in the national economy. 20 C.F.R. § 416.920 (a)(4)(v). Under the Medical-Vocational Rules, a person who is between 50 and 54 years of age is categorized as "approaching advanced age," while at 55, they are considered of "advanced age." 20 C.F.R. § 404.1563(d)-(e). The age categories are used in the Grids to make determinations at step five. Here, the plaintiff was born on May 31, 1960 and was 54 years and 7 months of age on December 31, 2014, the date last insured. Tr. 30. Accordingly, the ALJ determined that the plaintiff was "approaching advanced age" on December 31, 2014. Tr. 28.

Plaintiff contends that the ALJ erred by "mechanically" applying the age categories in a "borderline" age situation to categorize her as "approaching advanced age" where she was only five months away from turning 55 and should have been considered "advanced age." Dkt. No. 14 at 20. Plaintiff contends that had the ALJ applied the rules in

6

a non-mechanical way, she would have found the plaintiff disabled. *Id.* The Commissioner argues that the ALJ properly considered the borderline age situation, but reasonably determined that the plaintiff was appropriately categorized as "approaching advanced age." Dkt. No. 16 at 12. The Medical Vocational Rules state:

> "We will not apply the age categories mechanically in a borderline situation. If [a claimant is] within a few days to a few months of reaching an older age category and using the older age category would result in a determination or a decision that [the claimant is] disabled, [the Commissioner] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case."

20 C.F.R. § 404.1563(b). District Courts within the Second Circuit have interpreted "a few months" to be a range from two months or less to up to six months. *See Waldvogel v. Comm'r of Soc. Sec.*, 16-CV-0868 (GTS), 2017 WL 3995590 at *12 (N.D.N.Y. Sept. 11, 2017) (borderline where claimant was within two months of higher age category); *Polyak v. Berryhill*, 17-CV-0215 (HBF), 2018 WL 6418298 at *5 (W.D.N.Y Dec. 6, 2018) (slip copy) (borderline where claimant was within four months of higher age category); *Metaxotos v. Barnhart*, No. 04 Civ. 3006 (RWS), 2005 WL 2899851, at *7-8 (S.D.N.Y. Nov. 3, 2005) (six months and fourteen days is borderline). When the ALJ encounters a borderline situation, *they* "must decide whether it is more appropriate to use the higher age or the claimant's chronological age." *Torres v. Comm'r of Soc. Sec.*, 14-CV-6438, 2015 WL 5444888 at *9 (W.D.N.Y. Sept. 15, 2015) (citing Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX") at II-5-3-2) (emphasis added). "When making this determination, the [ALJ] is instructed to consider the presence of additional adversities . . . which require [ ] a greater showing of adversity" that the claimant faces in adjusting to other work. *Id.* "If a claimant's age is 'borderline' and the ALJ fails to consider whether the higher age category should be used, remand is warranted so long as a higher age

7

category would entitle the claimant to benefits." *Woods v. Colvin*, 218 F.Supp.3d 204, 209 (W.D.N.Y. 2016).

In her decision, the ALJ acknowledged that the plaintiff was five months from turning 55 and becoming "a person of advanced age" and considered whether a non-mechanical application of the age categories was warranted. Tr. 28. The ALJ noted that the plaintiff completed 10th grade in regular education classes, was fluent in English, and although her past relevant work was a home health attendant/aide, the plaintiff testified that she previously worked as a licensed insurance salesperson, among other things. Tr. 28. Therefore, the ALJ concluded that the record did not support any significant additional vocational adversities requiring a non-mechanical application of the age categories and deemed the 54-year-old plaintiff a person "closely approaching advance age." Tr. 30.

Although the plaintiff disagrees with the ALJ's categorization of her as "approaching advanced age," the ultimate determination on whether a claimant's borderline age or chronological age should apply is within the ALJ's discretion. *See Torres v. Comm'r of Soc. Sec.*, 2015 WL 544888 at *9. Moreover, where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *See Rutherford v. Schweiker*, 685 F. 2d 60, 62 (2d Cir. 1982). Accordingly, this Court finds that the ALJ's age designation was not erroneous and is supported by substantial evidence. *See Martinez v. Comm'r of Soc. Sec.*, No. 17 Civ. 8949 (HBP), 2019 WL1254842 at *27 (S.D.N.Y. Mar. 19, 2019) (holding remand unwarranted where the ALJ acknowledged the claimant's borderline age (less than one month from turning 55) and

8

considered non-mechanical application of the categories in determining it was appropriate to use the claimant's chronological age of 54).

**PA Nash's 2015 Report**

Plaintiff argues that the ALJ erred by "summarily discrediting and totally disregarding" PA Nash's 2015 report. Dkt. No. 14 at 27. This Court does not agree.

"While an ALJ may consider evidence from a PA, such a source is not an 'acceptable medical source' and therefore cannot constitute a 'treating source.'" *Evans v. Colvin*, 649 F. App'x 35, 38 (2d Cir. 2016) (citing 20 C.F.R. §§ 404.1502, 404.1513(d)(1)). In considering a PA's opinion, an ALJ must weigh the opinion according to multiple factors, including length, nature, and extent of the treatment relationship and frequency of examination; evidence in support of the opinion; the opinion's consistency with the record as a whole; and other relevant factors. *See* 20 C.F.R. § 404.1527(c).

PA Nash authored a spinal impairment questionnaire on behalf the plaintiff on September 15, 2015.[3] Tr. 538-541 (Exhibit 12F). In it, she opined that the plaintiff would be unable to stand, sit and walk for longer than fifteen minutes at a time where it would cause the plaintiff sharp, stabbing, aching pain radiating into the plaintiff's legs and head. Tr. 538-41. She also opined the plaintiff's range of motion would be limited in her cervical and lumbar spine with paraspinal joint tenderness and muscle weakness; and indicated that the plaintiff could frequently lift and carry five pounds or less, occasionally

---

[3] Craig Maclean, M.D. ("Dr. Maclean") from Southtowns Family Practice PC is listed as the plaintiff's doctor on the Spinal Impairment Questionnaire, however, the report is signed by PA Nash.

9

twenty pounds or less, and never lift and carry over twenty pounds. Tr. 539.  Finally, PA Nash concluded that the plaintiff would likely miss more than three days of work per month due to her impairments and estimated that the plaintiff's symptoms, as detailed on the September 2015 report, applied as far back as August 1, 2013, nearly a year before PA Nash first examined the plaintiff on May 23, 2014.  Tr. 543.

       In her decision, the ALJ extensively evaluated PA Nash's September 2015 report and ultimately accorded little weight to the PA's opinion.  Tr. 29.  The ALJ provided ample reasoning in support of her decision in accordance with 20 C.F.R. § 404.1527(c). First, the ALJ noted that as a physician's assistant, PA Nash is not an acceptable medical source, hence the ALJ was not required to accord the opinion controlling weight.  Tr. 29. Second, the ALJ found the opinion was inconsistent with PA Nash's treatment records the PA included symptoms and resulting limitations described from pain radiating into the plaintiff's leg, which the plaintiff did not complain about until March of 2015, three months after the date last insured.  *Id.*  The plaintiff's treatment records reflect that she was examined by PA Nash five times from May 23, 2014 through December 31, 2014.  Tr. 466-70, 482-85, 493-96, 503-5, and 507-12.  On March 31, 2015, upon examination with PA Nash, the plaintiff reported for the first time right lateral thigh pain that started two weeks prior to the examination.  Tr. 517-20.  The plaintiff also reported that her prescribed hydrocodone and ibuprofen had no effect on her pain at that time whereas, during her prior examination in December 2014, the plaintiff reported she was only using hydrocodone as needed for pain, relying on Ibuprofen instead.  Tr. 517-20, 507-12.

The ALJ also noted that the PA's opinion conflicted with Dr. Fahrbach's findings during his September 2014 examination of the plaintiff, where the plaintiff stated that she did not have lower extremity pain, weakness or numbness. Tr. 29 (referencing Tr. 557). Next, the ALJ observed that although PA Nash indicated the plaintiff could sit, stand, and/or walk for less than one hour in a work day, she also indicated the plaintiff can occasionally carry twenty pounds or less, amounting to up to 1/3 of an eight-hour workday, the equivalent of up to two hours. Tr. 29. The ALJ also found the symptoms and limitations suggested by PA Nash were inconsistent with the PA's opinion that the plaintiff could engage in a variety of ambulatory activities on a sustained basis, including shopping, banking, walking on rough or uneven surfaces, and climbing into and out of a bus. Tr. 29. Further, the ALJ noted that in December 2014, the plaintiff reported that she was going to Florida from January-March/April to help her father despite being unable to concentrate, sit, stand and/or walk for more than fifteen minutes at a time due to severe pain. Tr. 30.

Finally, the ALJ concluded that the plaintiff's treatment records reflected the plaintiff reported a significant worsening of her symptoms in March 2015, after she returned from Florida. Accordingly, the ALJ assigned very little weight to PA Nash's opinion as it applied to the period ending December 31, 2014. Contrary to the plaintiff's assertions, this Court finds the ALJ did not ignore, but properly considered PA Nash's opinion and her decision to accord the opinion little weight is supported by substantial evidence. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) ("Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.")

**Credibility**

Plaintiff also argues that the Commissioner erred in failing to credit her account of the severity of her impairments where none of her treating providers doubted her "veracity and credibility." Dkt. No. 14 at 28. This Court disagrees for several reasons. First, the determination of whether the plaintiff's subjective complaints are credible is left to the sole discretion of the Commissioner. *Aponte v. Sec'y, Dep't. of Health & Human Servs.*, 728 F.2d 599, 591 (2d Cir.1984). A claimant's subjective evidence of pain is entitled to great weight, but only when supported by objective medical evidence. *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). If a claimant's subjective evidence of pain suggests a greater severity of impairment than can be demonstrated by objective evidence alone, the ALJ must consider other evidence, such as the claimant's daily activities, duration and frequency of pain, medication, and treatment. *See* 20 C.F.R. § 404.1529(c)(3). Where supported by specific reasons, "an ALJ's credibility determination is generally entitled to deference on appeal." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir.2013). "Credibility findings of an ALJ … can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997).

Here, the ALJ found the plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms. However, the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the relevant period. Tr. 26.

First, the ALJ acknowledged the plaintiff's testimony that she had trouble turning her head while driving and problems with sitting for longer than thirty minutes, but that she recently traveled to Florida by RV in 2016. Tr. 26. Next, the ALJ noted the plaintiff's two prior surgeries including her anterior cervical discectomy and fusion on February 28, 2011, and anterior fusion in 1999. Tr. 26. The ALJ observed that Plaintiff claimed to be disabled due to neck and back pain starting on August 1, 2013. However, there is no record of plaintiff suffering neck or back pain until May 23, 2014 when the plaintiff was first examined by PA Nash. *Id.* Even when examined on that date, the plaintiff walked with normal gait and showed intact forward and side-to-side bending. Tr. 26. The ALJ noted that at that time, despite complaints of disabling pain, the plaintiff declined physical therapy and was noted to have no interest in hearing about alternatives other than an MRI as she said she was considering filing for supplemental security income due to back pain. *Id.*

Next, the ALJ noted that following a neurosurgical evaluation with Dr. Farbach in September 2014, the plaintiff failed to follow through with his instructions to complete physical therapy in the fall of 2014, but treated her pain with Hydrocodone and Ibuprofen. Tr. 27. The plaintiff was not treated again until December 2014, when she was examined for unrelated symptoms. Tr. 503-5. Moreover, at that time, Plaintiff reported to PA Nash that she had been exercising more, despite her neck and low back pain, and that she was only using Hydrocodone as needed for pain, relying on Ibuprofen instead. Tr. 507-512.

Therefore, the ALJ noted that according to the treatment records the plaintiff's symptoms (including right lumbar pain, right hip pain and limited range of motion) only became objectively serious in March 2015, *after* the relevant period. Accordingly, this Court finds that the ALJ's stated reasons for why she did not plaintiff's entirely credible are legitimate and entitled to deference. *See Calabrese v. Astrue*, 358 Fed.Appx. 274, 277 (2d Cir.2009) (summary order) (citation omitted).

## CONCLUSION

For the reasons stated above, defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is GRANTED. Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) is DENIED. The plaintiff's complaint (Dkt. No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

DATED: Buffalo, New York
July 16, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**